UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE CHARLES SCHWAB CORPORATION,<br><br>Plaintiff,<br>v.<br><br>BANC OF AMERICA SECURITIES LLC;<br>BANC OF AMERICA FUNDING<br>CORPORATION; UBS SECURITIES, LLC;<br>WELLS FARGO ASSET SECURITIES<br>CORPORATION; WELLS FARGO BANK,<br>N.A.; AND, DOES 1-50,<br><br>Defendants. | Case No.: 10-CV-03489-LHK<br><br><br><br>ORDER GRANTING MOTION TO<br>REMAND AND REMANDING CASE<br>TO SAN FRANCISCO SUPERIOR<br>COURT |

Plaintiff in this action has moved to remand the case to state court, where it was initially filed. For the reasons discussed below, the Court GRANTS Plaintiff's motion and remands the case. In light of this, the Case Management Conference set for March 18, 2011 at 11 a.m. is hereby VACATED.

I. Background

On June 29, 2010, Plaintiff Charles Schwab Corporation (Schwab) filed a complaint in the San Francisco County Superior Court, case number GCG-10-501151. *See* Notice of Removal (UBS Removal), Dkt. No. 1 at Ex. A (Compl.). The Complaint alleged that Schwab invested $130 million in three securitization trusts backed by residential mortgage loans. Compl. ¶ 1. Schwab claimed that defendants made misleading statements about the mortgages in those trusts, and that defendants omitted necessary material facts relating to the investments. *Id.* On the basis

1
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

of these allegations, the Complaint asserted the following causes of action: violations of the California Corporate Securities Act §§ 25401 and 25501; violations of the Securities Act of 1933, §§ 11, 12(a)(2), and 15; violations of the California civil code §§ 1572 and 1710; and a right to contract rescission under California civil code § 1689 *et seq*. In addition to the defendants named in the caption above, a number of other defendants were named. Bank of America Securities LLC and Bank of America Funding Corporation (together, BofA) were not named as defendants.

Schwab served defendants UBS Securities LLC (UBS) and defendants Wells Fargo Asset Securities Corporation and Wells Fargo Bank, N.A. (together, Wells Fargo) with the Complaint on or near July 9, 2010. UBS Removal at ¶ 3; Wells Fargo Joinder in Notice of Removal (Wells Fargo Removal), Dkt. No. 7, at ¶ 3. On July 27, 2010, Schwab filed an amended Complaint (FAC) in state court, dropping a number of defendants and adding BofA. In the FAC, Schwab alleges that it purchased two $50 M certificates from two separate securitizations, one issued by Wells Fargo (the Wells Fargo Mortgage Backed Securities Trust, Series 2007-10, or "Wells Fargo 2007-10 Trust"), the other by BofA (the Banc of America Funding Trust, Mortgage Pass-Through Certificates, Series 2006-D, or "BofA 2006D Trust").

On August 9, 2010, UBS removed the action from state court. In the Notice of Removal, UBS identified two bases for removability. First, UBS claimed that the case was removable because Schwab's claims are "related to" bankruptcy actions involving American Home Mortgage and First Magnus Financial, pursuant to 28 U.S.C. § 1334(b). UBS Removal at 4-5. Second, UBS claimed that the matter was removable based on diversity jurisdiction. UBS Removal at 5. Wells Fargo joined in UBS's Removal, asserting the same bases for removal (except that Wells Fargo did not rely on the First Magnus Financial bankruptcy as a source of "related to" bankruptcy removability). *See* Wells Fargo Removal.

On August 17, 2010, after removal by UBS and Wells Fargo, Schwab served BofA with the FAC. On September 16, 2010, BofA joined in the original UBS Removal. *See* BofA Removal (Dkt. No. 26). In addition to joining in the removal bases cited by UBS, BofA asserted that "related-to" bankruptcy jurisdiction arises based on the bankruptcy of IndyMac Bancorp, Inc. *Id*. BofA did not raise a separate legal basis for removal.

2

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

Before BofA's joinder in the UBS Removal, on September 8, 2010, Schwab filed its Motion to Remand. *See* Mot. (Dkt. No. 18). Pursuant to party stipulation, the briefing schedule on this motion was extended, such that the Motion was set for hearing on February 3, 2011.

In addition to this case, Schwab has brought three other cases in San Francisco Superior Court asserting similar claims based on its investments in Mortgage Backed Securities (MBS). The first-filed of these cases, *Schwab v. BNP Paribas et al.*, 10-cv-04030, was recently remanded to the San Francisco Superior Court on the basis of equitable remand. *See* Feb. 23, 2011 Order. Related cases *Schwab v. J.P. Morgan Secs. Inc.*, 10-cv-04522 and *Schwab v. J.P. Morgan Secs. Inc.*, 10-cv-04523 are pending before Judge White in this District, and motions to remand are pending.

II. Legal Standard

Federal courts are courts of limited jurisdiction, and a cause of action is presumed to lie outside this limited jurisdiction until the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). A defendant may remove an action from state court if it could have originally been brought in federal court. 28 U.S.C. § 1441. The defendant has the burden of establishing that removal is proper. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

III. Analysis

    a. Removal based on Diversity Jurisdiction

Defendants argue that the Court should find jurisdiction based on diversity in this matter. Defendants concede that the parties in this case are not diverse.[1] *See* UBS/Wells Fargo Opp'n at 1. However, defendants urge the Court to look behind what they call a "collusive assignment" of claims from Charles Schwab Bank, N.A. (Schwab Bank, a Schwab affiliate) to Schwab, and to consider the citizenship of Schwab Bank rather than Schwab to determine whether diversity jurisdiction is proper. Schwab Bank is a citizen of California, while none of the defendants are California citizens. Schwab Bank is the entity that actually invested in the MBS trusts at issue in this case, but it assigned its claims relating to these investments to plaintiff Schwab. Thus, if

---

[1] Plaintiff Schwab and several of the defendants are Delaware corporations.

3

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

1    Schwab Bank had not assigned its claims to Schwab, but had itself sued defendants, diversity
2    jurisdiction would exist.  While 28 U.S.C. § 1359 prohibits the creation of diversity jurisdiction
3    through collusive assignment, it says nothing about the destruction of diversity jurisdiction by
4    assignment.  However, Defendants urge the Court to apply a Section 1359-type analysis to the
5    alleged destruction of diversity by Schwab.

6    Defendants argue that the assignment from Schwab Bank to Schwab bears several
7    hallmarks of a collusive assignment.  The assignment was executed on the same day that the
8    original Complaint was filed.  *See* Hartman Decl. ISO Mot. to Remand, Ex. A (Assignment).
9    Schwab Bank assigned "all of its right, title, and interest in any and all claims . . . that it has or may
10   have . . ." to Schwab.  *Id*.  However, the agreement states that Schwab will pay Schwab Bank "97%
11   of any amounts it recovers in pursuing such Claims, whether by settlement or award."  *Id*.
12   Defendants argue that under Ninth Circuit authority, the Court should find that this assignment was
13   made in order to destroy diversity, and should therefore disregard it when considering the diversity
14   of the parties.  *Attorneys Trust v. Videotape Computer Prods.,* 93 F.3d 593, 598 (9th Cir. 1996).

15   In *Attorneys Trust*, a Chinese corporation (CMC) assigned its claim against a California
16   corporation (VCP) to a collection agency (Attorneys Trust), also a California citizen.  *Attorneys*
17   *Trust*, 93 F.3d at 594.  Attorneys Trust filed suit in federal court, claiming diversity jurisdiction
18   (even though it was not diverse from defendant VCP).  *Id*.  VCP counter-claimed against CMC,
19   and the attorney representing Attorneys Trust appeared on behalf of CMC.  *Id*.  Attorneys Trust
20   obtained "a result inimical to the interests of CMC" at trial.  *Id*.  After this defeat, Attorneys Trust
21   appealed, arguing that the district court never properly had jurisdiction because there was no
22   diversity between the parties (despite the fact that Attorneys Trust itself had asserted diversity
23   jurisdiction as the basis for its federal filing).

24   In these atypical circumstances, the Ninth Circuit noted that "there is no more reason for
25   federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for
26   them to countenance the creation of jurisdiction in that manner," and disregarded the assignment
27   from CMC to Attorneys Trust in finding that the district court properly exercised jurisdiction based
28   on diversity.  *Attorneys Trust*, 93 F.3d at 598-600.  Relying on statements like this from *Attorneys*

4
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

*Trust*, defendants urge the Court to extend its holding to the present case. However, the Ninth Circuit characterized *Attorneys Trust* as a "most unusual situation" and limited the holding to cases where "an action is filed directly in the district court." *Id.*, 93 F.3d at 600.

Defendants correctly assert that the assignment between Schwab Bank and plaintiff Schwab has many characteristics of a collusive assignment as defined in *Attorneys Trust*. *See Attorneys Trust*, 93 F.3d at 599. The facts that Schwab had no prior interest in the claim, that the assignment was executed on the day the suit was filed, and that no consideration for the assignment was given beyond a contingency interest all suggest collusion. In addition to these factors, defendants argue that the Court should consider the assignment a partial assignment, because Schwab will only retain 3% of any recovery obtained through the assignment. *See* UBS/Wells Fargo Opp'n at 10. Schwab responds that its assignment should be considered complete.

Schwab relies on a recent Supreme Court decision finding an assignment very similar to the one between Schwab Bank and Schwab to be a complete assignment. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 286 (2008). Just like the assignment between Schwab Bank and Schwab, the *Sprint* assignment gave "all rights, title and interest" in the assignor's claims to the assignees. However, pursuant to a separate agreement, 100% of the litigation proceeds would be returned to the assignors, and the assignees would be paid a fee for litigating the claims. *Sprint*, 554 U.S. at 272. The Supreme Court held this assignment transferred the assigned claims "lock, stock, and barrel" to the assignee, and was a complete assignment. *Id*. at 272, 286. Despite the later transfer of any recovery, for the period of the litigation, the assignees retained all rights to the claims, and standing to enforce them. *Id*. at 286. Although the Supreme Court was considering standing rather than diversity jurisdiction, the Court finds the holding pertinent to the analysis here.

Although defendants are correct in arguing that the assignment between the two Schwab entities bears some hallmarks of collusion to defeat jurisdiction, following *Sprint*, the Court finds that the assignment is complete. In light of this complete assignment, no other party (including Schwab Bank) has standing to bring the claims that Schwab brings here. Accordingly, the Court declines to ignore Schwab's citizenship and to rely on the citizenship of non-party Schwab Bank to find that diversity jurisdiction exists. As the Ninth Circuit held in *Attorneys Trust*, in the context of

5

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

1   diversity-destroying assignments, "courts have remained sensitive to and concerned by
2   manipulations of their jurisdiction *with partial assignments* which lack reality and amount to no
3   change in the identity of the party with the real interest in the outcome of the case." *Attorneys*
4   *Trust,* 93 F.3d at 597 (emphasis added). In contrast, "if an assignment is entire, not partial, there is
5   a very good chance that it will be found to be proper." *Attorneys Trust*, 93 F.3d at 596.

6   As the Supreme Court noted in *Sprint*, assignees like Schwab are considered real parties in
7   interest. *Sprint*, 554 U.S. at 284, citing 6A C. Wright, A. Miller, & M. Kane, Federal Practice and
8   Procedure § 1545, at 346-348 (2d ed. 1990)). Defendants have been unable to cite to any Ninth
9   Circuit authority other than *Attorneys Trust* in support of their argument that the Court should
10  ignore the citizenship of the actual plaintiff and instead consider that of a non-party to find that
11  diversity jurisdiction exists.[2] Schwab notes that another judge in this District has found no
12  diversity jurisdiction in a factual situation very similar to the one presented here. *See Go*
13  *Computer, Inc. v. Microsoft Corp.,* No. C 05-03356 JSW, 2005 U.S. Dist. LEXIS 31404 at *8
14  (N.D. Cal. Nov. 21, 2005) (finding assignment complete although consideration was only a
15  variable percentage of the recovery, and declining to find diversity jurisdiction when parties were
16  non-diverse). As noted above, *Attorneys Trust* was limited to the unusual case where the party
17  attacking diversity jurisdiction initially filed suit in federal court.

18  Defendants also argue that because the assignment was made between related entities it is
19  Schwab's burden to prove that the assignment was proper. UBS/Wells Fargo Opp'n at 9-10.
20  However, the authorities defendants cite on this point considered assignments to *create* federal
21  jurisdiction, not assignments to destroy it. *See Yokeno v. Mafnas*, 973 F.2d 803, 809-10 (9th Cir.
22  1992); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas*, S.A., 20 F.3d 987, 992 (9th Cir.
23  1994), *Attorneys Trust*, 93 F.3d at 596 (discussing case law in diversity-creation cases). In *Yokeno*,

---

[2] At the hearing on this Motion, counsel for Wells Fargo cited several cases not cited in its Opposition, for the proposition that the Court could look to the citizenship of non-parties to find diversity jurisdiction. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894 (9th Cir. 2006*); Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 463 n.9 (U.S. 1980). However, as the Court noted at the hearing, both of these cases determined the citizenship of business entities (respectively, an LLC and a business trust). In the Ninth Circuit, the citizenship of an LLC is the citizenship of all its individual members. See *Johnson*, 437 F.3d at 899. Because the business entities were parties to these cases, their members were parties as well. Thus, these authorities are inapposite.

6
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

for example, the plaintiff bore the burden of establishing that the assignment which created diversity was for non-pretextual business reasons. But it is always the burden of the party asserting federal jurisdiction to show that such jurisdiction is appropriate. *See Kokkonen*, 511 U.S. at 377. Here, the parties asserting federal jurisdiction are the defendants, not the plaintiff. Thus, the Court declines to extend the *Yokeno* rule to impose a burden on Schwab in this context of alleged diversity destruction. Accordingly, the Court concludes that there is no diversity jurisdiction in this matter, and removal on that ground was not proper.

          b.   Removal based on "Related to" Bankruptcy Jurisdiction

This action was removed from state court in part on the basis of "related to" bankruptcy jurisdiction.[3] Under 28 U.S.C. § 1334, federal courts have original jurisdiction over claims that are "related to cases under title 11." 28 U.S.C. § 1334. The Ninth Circuit has held that a case is "related to" a bankruptcy case if "'*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*,'" such that "'the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988) (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original).

Once a bankruptcy plan has been confirmed, however, "related to" jurisdiction is limited to cases presenting a "close nexus" to the bankruptcy plan. In these circumstances, matters that affect "'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" *Montana v. Goldin (In re Pegasus Gold Corp.),* 394 F.3d 1189, 1194 (9th Cir. 2005) (citing *In re Resorts Int'l, Inc.,* 372 F.3d 154, 166-67 (3d Cir. 2004). This test "recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility . . . ." *Id*.

---

[3] Initially, Schwab argued that because it asserts 1933 Securities Act claims in its FAC, and because these claims are not removable if asserted in state court, the case could not be removed on any ground, including related-to bankruptcy jurisdiction. *See* 15 U.S.C. § 77v(a). However, after this argument was rejected by Judge Conti in this District, Schwab withdrew it. *See Fed. Home Loan Bank of San Francisco v. Deutsche Bank Secs.,* Nos. 10-3039 SC, 10-3045 SC, 2010 U.S. Dist. LEXIS 138564 at *15-*20 (N.D. Cal. Dec. 20, 2010); Mot. at 1, n.1.

7
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

i. "Related to" Bankruptcy Jurisdiction

Defendants assert two different bankruptcies as the basis for related-to bankruptcy jurisdiction.[4] The Court considers these in turn.

Wells Fargo asserts the bankruptcy of American Home Mortgage (AHM) as a jurisdictional basis. Wells Fargo states that AHM originated about 15%[5] of the loans in the Wells Fargo 2007-10 Trust, and that through contractual indemnity provisions, Wells Fargo is entitled to "all defense costs and attorneys' fees" relating to these AHM-originated mortgages. While Schwab's Motion was pending, the AHM bankruptcy plan was confirmed. *See* Reply at 10. Therefore, the "close nexus" test applies to determine whether Wells Fargo's indemnity claims bear a "close nexus" to the AHM bankruptcy. At the hearing on this Motion, Wells Fargo stated that it has submitted a proof of claim in the AHM bankruptcy. If no objection to this claim is made, there will be some administrative evaluation of it and, potentially, a pay out to Wells Fargo. If an objection is made, a contested proceeding in bankruptcy court could follow.

In its Opposition to Schwab's Motion, Wells Fargo focused on the "any conceivable effect" test rather than the "close nexus" test. In factually-similar cases, several district courts have concluded that the AHM bankruptcy gives rise to "related to" jurisdiction under either the "conceivable effects" test or the "close nexus" test. *See Deutsche Bank Secs.,* 2010 U.S. Dist. LEXIS 138564 at *15 (applying "conceivable effects" test); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,* No. 10-CV-07275 MRP, 2010 U.S. Dist. LEXIS 139289 at *10-*18 (C.D. Cal. Dec. 29, 2010) (applying "close nexus" test); *Schwab v. BNP Paribas et al.*, No. 10-cv-04030, 2011 U.S. Dist. LEXIS 22322 at *10 (Feb. 23, 2011) (assuming, without deciding, that the "close nexus" test had been met). The Court concludes that Wells Fargo has shown that its proof of claim against AHM could "affect" the "interpretation" or "implementation" of the AHM bankruptcy.

---

[4] The original UBS removal identified an additional bankruptcy matter as the basis for "related-to" bankruptcy jurisdiction—that of First Magnus Financial. However, defendants did not argue that the First Magnus bankruptcy gave rise to "related to" jurisdiction in their Opposition to the Motion, and UBS confirmed at the hearing on this Motion that it no longer asserted the First Magnus bankruptcy as a basis for jurisdiction. Therefore, the Court will not consider First Magnus in this analysis.

[5] Schwab calculates the number of mortgages originated by AHM by dollar value rather than by total number of mortgages, and thereby arrives at a figure of 12%. The Court does not find the 12%/15% differential significant in this analysis.

1  Accordingly, the Court finds that Wells Fargo has satisfied the "close nexus" test regarding the
2  AHM bankruptcy, and this Court has jurisdiction on this basis.

3  BofA has asserted the bankruptcy of IndyMac Bancorp, Inc. (IndyMac Parent) as the basis
4  for "related to" jurisdiction. However, BofA has no indemnity agreement with IndyMac Parent.
5  Instead, BofA claims indemnity against IndyMac Bank. IndyMac Parent is the parent holding
6  company of IndyMac Bank; IndyMac Bank is the sole asset in the bankruptcy estate of its parent.
7  BofA alleges that IndyMac Bank originated 25% of the loans in the BofA 2006D Trust. Because
8  IndyMac Bank was a federally-insured bank, it could not declare bankruptcy itself. Instead, in
9  July, 2008, it was taken into receivership by the FDIC. FDIC Notice, 74 F.R. 59540-01. BofA
10  urges that it "makes no difference" that IndyMac itself has not declared bankruptcy. BofA Opp'n
11  at 14. Schwab responds that in light of a March 19, 2009 FDIC determination that IndyMac
12  Bank's debts exceed its assets there is no likelihood that BofA will ever impact the bankruptcy of
13  IndyMac Parent because there will never be any funds in the estate to claim. *See* Reply at 9-10;
14  FDIC Notice, 74 F.R. 59540-01.

15  In a recent decision, Judge Conti of this District considered the IndyMac Bancorp, Inc.
16  bankruptcy and its relationship to indemnity claims from an MBS case similar to the one Schwab
17  brings here. *See Deutsche Bank*, 2010 U.S. Dist. LEXIS 138564 at *12. Judge Conti found that
18  although it was "conceivable" that the Deutsche Bank action could have an effect on the IndyMac
19  Parent bankruptcy, such an outcome was "unlikely" in light of the FDIC's Notice. *Id*. Likewise,
20  the Court concludes that, under the "any conceivable effects" test, there is at least a possibility that
21  BofA's claims will impact the IndyMac Parent bankruptcy. However, this possibility is remote.

22  In its Motion, Schwab argued that the indemnity provisions at issue could not be enforced
23  by the defendants without a separate action to enforce them, and that on this basis the Court should
24  find no "related to" bankruptcy jurisdiction. *See* Mot. at 14-15. In Opposition, defendants argued
25  that the provisions at issue provided "automatic and contractual indemnity rights," and no separate
26  filing was required to enforce them. UBS/Wells Fargo Opp'n at 13. Defendants distinguished the
27  authority cited by Schwab, all from the Third Circuit, arguing that the cited cases addressed
28  equitable rather than contractual indemnity agreements. *See Pacor*, 743 F.2d 984, 995 (3rd Cir.

9
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124 (1995); *In re Federal-Mogul Global, Inc.,* 300 F.3d 368, 380-82 (3d Cir. 2002). In *Pacor*, the Third Circuit found that equitable indemnity rights did not give rise to "related to" jurisdiction, but in so holding noted that contractual indemnity claims *did* provide a basis for the exercise of "related to" jurisdiction. *Pacor*, 743 F.2d at 995. Schwab did not address this argument in its Reply. At the hearing on its Motion, Schwab would not concede that it had withdrawn this argument, but recognized that several courts had rejected it. In light of the holding in *Pacor*, this Court rejects it as well.

Accordingly, the Court concludes that it does have related-to bankruptcy jurisdiction on the basis of the AHM and IndyMac parent bankruptcies. This does not end the inquiry, however. Under 28 U.S.C. § 1452(b), the Court may remand a claim removed pursuant to 28 U.S.C. § 1334(b) "on any equitable ground." As described below, the Court finds that the equities favor remand in this case.

        ii. Equitable Remand

Section 1452(b) gives courts "an unusually broad grant of authority" in determining whether remand is equitable. *In re Roman Catholic Bishop of San Diego,* 374 B.R. 756, 761 (Bankr. S.D. Cal. 2007). In the Ninth Circuit, courts consider the following factors when deciding if remand is in the interests of equity:

> (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness of the action to the bankruptcy case; (6) any jury trial right; and (7) prejudice to plaintiffs from removal.

*Hopkins v. Plant Insulation Co.,* 349 B.R. 805, 813 (N.D. Cal. 2006) (citing Williams v. Shell Oil Co., 169 B.R. 684, 692-93 (S.D. Cal. 1994).

Regarding the first and fifth factors, the fact that the AHM bankruptcy plan is already finalized, and the remote chance that BofA will ever obtain any payout from the IndyMac Parent bankruptcy suggest that the *likely* overall effect of this litigation on either bankruptcy is minimal or non-existent. Judges Conti and Illston of this District concluded likewise regarding the very bankruptcies at issue here in their recent opinions in factually similar cases. *See BNP Paribas et*

10
Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

1    *al.*, 2011 U.S. Dist. LEXIS 22322 at *13; *Deutsche Bank*, 2010 U.S. Dist. LEXIS 138564 at *34-

2    *36. Judge Conti found a "remote connection" between the *Deutsche Bank* case and the related

3    bankruptcies even though the loans in 16 of the 39 trusts at issue had been originated *entirely* by

4    bankrupt entities (AHM and IndyMac Parent). *See Deutsche Bank*, 2010 U.S. Dist. LEXIS 138564

5    at *36 n.11, *37 n.13-15.

6        Only 15% of the loans in the Wells Fargo 2007-10 Trust were originated by AHM. While

7    25% of the loans in the BofA 2006D Trust were originated by IndyMac Bank, the FDIC's

8    statements about the IndyMac Parent bankruptcy suggest that it is highly unlikely that BofA will

9    ever have any impact on that estate based on this case. Accordingly, the Court finds that this case

10   will have only a minimal, if any, effect on the AHM and IndyMac Parent bankruptcies. At the

11   hearing on this Motion, the Court asked counsel for defendants to explain if their indemnity claims

12   would proceed any differently if this case were remanded, or not. The only practical effect that

13   defendants cited was the possibility that it would be easier to coordinate any overlapping discovery

14   with the federal bankruptcy proceeding (assuming such discovery is required) if this Court retains

15   the case. But there is no reason that discovery cannot be coordinated between a state court

16   proceeding and a federal bankruptcy proceeding, just as it can be coordinated between a federal

17   district court matter and a federal bankruptcy matter. The Court does not find this to be a

18   compelling reason to retain jurisdiction over the case. Therefore, the Court concludes that these

19   two factors weigh in favor of remand.

20       Regarding the second, third and fourth factors, because the Complaint alleges both federal

21   and state causes of action, neither law can be said to predominate. However, as noted above, the

22   1933 Securities Act claims were not removable when initially asserted in state court. *See* 15

23   U.S.C. § 77v(a). This Court follows Judges Illston and Conti in finding that, in light of this, comity

24   concerns weigh in favor of remand. *See BNP Paribas et al.*, 2011 U.S. Dist. LEXIS 22322 at *13-

25   *14; *Deutsche Bank*, 2010 U.S. Dist. LEXIS 138564 at *39. Thus, these factors weigh in favor of

26   remand.

27       Regarding the seventh factor, the Court finds that it is neutral regarding remand. While

28   Judge Illston has remanded the *BNP Paribas* case, Judge White has yet to rule on Schwab's motion

to remand its two MBS cases pending before him.  Thus, it is not clear that Schwab will be able to move all of these matters back to state court.  In these circumstances, the Court does not find that Schwab faces particular prejudice whether or not this matter remains in federal court or returns to state court.  Because Schwab is entitled to a jury trial in either court, the sixth factor is irrelevant to the analysis here.

Accordingly, the Court finds it appropriate to remand this case to the Superior Court for San Francisco County, where it was originally filed.

### c. Waiver

BofA urges that because Schwab did not separately move to remand this case after BofA filed its Joinder in Removal, this Court is without power to equitably remand this case.  BofA's argument is as follows.  After removal by UBS and Wells Fargo, based on related-to bankruptcy jurisdiction and diversity jurisdiction, Schwab moved to remand the entire case, asserting that neither basis of jurisdiction was appropriate.  After Schwab's Motion, BofA filed a Joinder in the UBS Removal, asserting the IndyMac Parent bankruptcy as an additional factual basis supporting the related-to bankruptcy jurisdiction already asserted by UBS and Wells Fargo.  Schwab did not file an additional Motion to Remand the case responding to BofA's Joinder; instead, it addressed the IndyMac Parent bankruptcy in its Reply brief.  However, Schwab's Motion did assert broad arguments against related-to bankruptcy jurisdiction that applied equally to all asserted bankruptcies, including that of IndyMac Parent.  For example, Schwab argued that indemnity claims (like those of BofA and Wells Fargo) must be asserted in a separate action, and that this defeated "related to" jurisdiction.  *See* Mot. at 14-16.  BofA argues that Schwab's failure to assert an argument specifically addressing the IndyMac Parent bankruptcy until its Reply waived any objection to this Court exercising original jurisdiction over the 1933 Securities Act claims asserted in the Complaint, and therefore that the Court has no discretion to remand this case.  BofA's argument is not persuasive.

The Court has rejected Schwab's argument regarding related-to bankruptcy jurisdiction and has found that related-to bankruptcy jurisdiction exists.  Thus, even if Schwab "waived" the only basis for removal asserted in BofA's Joinder, this would appear to be moot because the Court has

12

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

1   concluded that jurisdiction based on the IndyMac Parent bankruptcy is proper. However, the Court

2   cannot agree with BofA that Schwab's failure to explicitly address the IndyMac Parent bankruptcy

3   in its Motion somehow waived the Court's discretion to remand this case pursuant to 28 U.S.C.

4   § 1452(b). BofA argues that because Schwab's complaint alleges federal claims under the 1933

5   Securities Act, the Court cannot remand the case because it has original federal jurisdiction over

6   these claims. But BofA's Joinder in Removal said nothing about the 1933 Securities Act claims,

7   presumably because those claims *were not removable*. The Court is not persuaded that Schwab

8   somehow "waived" by failing to object to a jurisdictional basis not raised by, and not available to,

9   any removing defendant.

10         The cases BofA cites in support of this argument are distinguishable. *See Northern Cal.*

11   *Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1037 (9th Cir. 1995);

12   *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1070 (9th Cir. Cal. 2001). In *Pittsburg-Des*

13   *Moines*, one of the defendants removed the case without obtaining the concurrence of another

14   defendant. *Pittsburg-Des Moines* at 1037. The plaintiff failed to raise this procedural defect in its

15   motion to remand, but raised it in its reply briefing. *Id*. The Ninth Circuit held that because this

16   procedural defect was not raised within 30 days of the removal, the argument had been waived. *Id*.

17   Putting aside the fact that Schwab did make arguments applicable to the IndyMac Parent

18   bankruptcy in its Motion, in any event, the Court has rejected these arguments, so any waiver on

19   this point is moot. In *Morris*, the defendants removed on the basis of diversity jurisdiction.

20   *Morris*, 236 F.3d at 1069-70. The plaintiff later destroyed diversity by joining a non-diverse

21   defendant, but did not move to remand the case (on this or any ground). *Id*. The Ninth Circuit held

22   that failure to move for remand waived the argument that federal jurisdiction was improper. *Id*.

23   Unlike Schwab, the plaintiff in *Morris* made no motion to remand at all, and waiver was found on

24   that basis.

25         In sum, the Court is not persuaded that it was somehow divested of its broad authority to

26   equitably remand a "related to" bankruptcy case because of Schwab's failure to separately address

27   the IndyMac Parent bankruptcy until its Reply brief.

28

13

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE

IV. Conclusion

For the foregoing reasons, Schwab's Motion to Remand is GRANTED.  The Case Management Conference set for March 18, 2011 at 11 a.m. is hereby VACATED.

**IT IS SO ORDERED.**

Dated: March 11, 2011

_____
LUCY H. KOH
United States District Judge

14

Case No.: 10-CV-03489-LHK
ORDER REMANDING CASE